v. John Doe v. James McDonald, et al., 23-12-24. We'll begin with counsel for the appellant, Mr. Malone. I see you've reserved two minutes for rebuttal. I am going to try to hold everybody to your time today unless we have a lot of questions for you, but be prepared to be keeping an eye on your green, yellow, red lights. All right, Mr. Malone, we'll hear from you. Good morning, Your Honors. I'm Gary Malone of Constantine Cannon, representing Respondent Appellant, the New York State Department of Health. The state is seeking dismissal of Plaintiff Appellee Doe's action for lack of Article III standing. Under precedence of the Supreme Court and this Court, Mr. Doe has no standing to continue maintaining this action seeking injunctive relief against New York state regulations because he has conceded that he has no concrete plans to engage in any conduct affected by the regulations. Mr. Doe is suing to invalidate state regulations that restrict the admission of persons with serious mental illness from entering into transitional adult homes, which are defined as adult homes with at least 80 beds in which 25 percent or more of the residents have serious mental illness. But Mr. Doe is not seeking admission into any transitional adult home. Instead, he alleges that he is a person with serious mental illness who resides at Ocean View Manor, an adult home that was designated a transitional adult home as of the start of this action. Assuming that he can demonstrate that he has a fixed determination to leave that facility and assume a more normal life. He's already tried that twice, so it's plausible for him to say that he's planning to do that again as soon as he can. And then the question becomes whether he could go back to Ocean View. But that depends on regulations that deal with transitional adult homes. Is Ocean View now a transitional adult home? No, it is not, Your Honor. Is that in the record that it is not? It's not in the record. It was put into public filings by the independent reviewer in the related case in the Eastern District of New York. Is that something we can take judicial notice of? Yes, as we discuss in our reply brief, this court can take judicial notice of judicial filings and other actions. And there's no dispute that Ocean View is no longer designated a transitional adult home. It is no longer restricted from admitting new residents with serious mental illness. So Mr. Doe simply has no standing whatsoever on any theory. I thought that limitation, that regulation, was produced by the settlement of a lawsuit. And therefore, I'm not sure I know how or why that regulation would be undone. But I suppose the regulation is still in place. It suggests that Ocean View is no longer a transitional home. That's correct. Ocean View is no longer a transitional adult home. And the regulation, Your Honor, it was adopted in conjunction with the settlement of a lawsuit. But it sets parameters, right? And Ocean View no longer fits those? Is that what happened? Yes, Your Honor. Okay, so the definition still exists in the regulation. It's just that whatever boxes needed to be ticked, Ocean View no longer ticks them? Right. Ocean View, presumably, its number of residents with serious mental illness has gone below 25%. So it's no longer transitional adult home. It's no longer restricted by the regulations. And even if Mr. Doe has an intent to return to Ocean View, that intent alone, even if it's a solid intent, is not sufficient under the precedence of this Court and the Supreme Court. In the Lujan case, the Supreme Court said that someday intentions, that you might go somewhere someday, but you don't have any concrete plans, is not sufficient to establish standing. Similarly, in the Clapper case, the Supreme Court said a highly attenuated chain of possibilities is not sufficient to establish standing. And here, we have an extremely attenuated chain of possibilities. Well, it gets kind of close when you talk about somebody's intention to get away from a more restrictive housing condition. I mean, that's natural that he would aspire to this, and he's to do it a couple of times, but it seems to me he's succeeded twice in getting back. And in any event, there's a waiver procedure. Was he able to get back to Ocean View twice by virtue of the exercise of a waiver? Because one's only just one day. Yes. The first time that he got back, the state did waive the regulations, although that was after he brought an action, and he sought and obtained a TRO. And Judge Garifas, in the related federal case, directed the state to take action to accommodate Mr. Doe, and the state waived the regulations on an informal basis. So Ocean View was still a transitional adult home. He would not really have the expectation if he left and wanted to come back that he would be able to do so unless he started a lawsuit. Well, no. That's what happened in 2017, Your Honor. After that, the state adopted a formal waiver procedure and put it into the regulations, amended the regulations, and now the regulations explicitly state that if you're a former resident of a transitional adult home or want to return the transitional adult home can get a waiver. And in the record, we've shown that this waiver procedure has operated smoothly. Most waivers are granted. The only time they're not granted is on situations in which either the home is unsafe or the regulations provisions have not been met, such as there's not been a showing that the person was actually a former resident of a transitional adult home. Mr. Doe has simply had no standing any longer, Your Honor, if he ever did. And Judge Sotheby's decision here is in direct conflict with Judge Garifuss's decision in a related case, the residents and families case, which held that if you're living in an adult home, a transitional adult home, you have no standing to challenge the admission policies there because you're already in the home. Thank you, Your Honor. I'll reserve the time for rebuttal. Thank you, Counsel. Counsel, you have 10 minutes. Thank you, Your Honors. May it please the Court. I'm Michael Horelchuk of O'Connell and Aronowitz, representing the petitioner, Appa Lee John Doe. Before I address the substance, there's one kind of procedural issue that I'd like to address first, which is there's kind of, and I don't mean this in a bait-and-switch, in that this case was brought as an interlocutory appeal of the summary judgment decision on the issue of John Doe's standing. But now on the reply, they've raised issues, including this issue that was discussed here about Oceanview's change of status, no longer being a transitional adult home, which I think goes not to standing, but to mootness. And I recognize that they're closely related concepts, but this, you know, was raised for the first time in reply, and it's something we've had no opportunity to develop a factual record before this Court. I do have a substantive response on that, but we think to the extent that this goes to mootness rather than standing, it's something that should be addressed in the first instance in the district court, and could have been addressed there. There's sort of related concepts. I mean, it looks like your client is really pushing on an open door. So that's, for a few, that's, we I'll briefly explain, and again, we have not had any opportunity to develop a factual record on this, but we're all here. Yes, but the, so Oceanview, as I understand, as we stand here right now, has been removed from the transitional adult home list, but there is no guarantee that will remain in that status. And to, I need to get a little bit of context for this. The state, on the merits question in this case, the legitimacy of these regulations that are being challenged in this case, the state's position, their rationale throughout all this litigation across multiple cases, has been that this regulation is necessary because without it, these adult homes will be flooded with people with serious mental illness and will become warehouses with people with mental illness. That is the position they have consistently held for over a decade across multiple cases in state and federal court. If that is correct... Isn't that the finding in a case that the state lost? The, which, isn't which the finding? The case earlier that established the, well, there are, there are statements to that effect in, in the East, in the Eastern District case under Judge Garifas to that effect that, that he, he made findings to that effect, right? But the, the point is, if, if that is correct, so, so accepting that argument that, that is correct, then once a home has reduced its number of, of residents with mental illness below that threshold that takes them out of that status and is able to begin admitting people with mental health, with mental illness again, they will immediately go right back up over that threshold. So these houses are going to be continuously just right on that verge of that threshold because as soon as they come out of status, they start admitting people again and go back in status and go in and out. Or the only other alternate possibility, if these homes come out of that status and remain out of that status, then that's an indication that these homes are deliberately not admitting people with mental illness because of the shadow of this regulatory structure that hangs over them. If they spent 10 years trying to get themselves out of transitional adult home setting, they don't want to admit people that's going to put them back under this regulatory structure and bring down the ire of the federal judge in the other case. And so, so either way, it's, it's creating this barrier that continues to exist to a person with mental illness to get in there. Whether the home is going to flip-flop back into transitional adult home status where they'll be barred again by the regulation or because the homes are deliberately excluding people to remain. That seems to me an effective argument against mootness, but it's not necessarily an effective argument on standing because it means that when the time comes that, that your client sensibly exercises a desire to get out of more restrictive housing and if he fails, as he has twice, wants to get back in, we don't even know whether he'll have any trouble. You're saying he might, he might, but that's, that's a condition. But that, so, I mean, that puts him in a position of, of, of, you know, just at the mercy of, of having to, well again, let me. It exposes him to risk. And the question is, is that risk sufficiently palpable that gives him standing? I, I, we think it is and we think we could, you know, demonstrate that. But again, we have not had any opportunity to create a factual record on this because these are issues that arose subsequent to the summary judgment. Set aside that change in status. Yes, yes. Even setting aside the change in status. Which, yep. There are a series of events and it strikes me that in your briefing you have isolated each step and said, well, this step very well could happen, and this step very well could happen, and this step very well could happen. But in order for him to get from his current position to the harm you posit, there actually has to be a series of only potential or possible events. Can you talk about that? You set aside that moment. Yes, and, and, and I'm going to kind of analyze them each one by one, but, but understanding that they're all relevant and they all kind of play together, but I want to explain why only one of those three is really relevant here. And, and, and I'll start at the end. They've made a lot of this waiver process and saying the waiver will be available. That waiver is a red herring because there's no question that the, the, the, again, setting aside the transitional adult home issue with Oceanview, but assuming it's a transitional adult home, there's no question that the regulation will apply in the first instance to bar him admission. And it will be only by jumping through additional hoops that he may be able to get admission through the waiver process. And it is that, again, this is a case alleging disability discrimination. If this were, imagine a case of racial discrimination where you had a housing provider who said white applicants can be immediately admitted, but black applicants have to fill out a supplemental application, which is typically granted within only a few days. You, no one would ever say, well, you know, they have to show some additional extra injury that's going to happen to them in those extra couple days before they get in. They're injured by the discriminatory bar in the first place, which will apply. That, and so that, that's, that's, you know, the, the point three, if you, if he comes back in. The second part, you know, they've said, look, he doesn't just have to have plans to move out of Oceanview. He has to have, they, they use the phrase that he has to have a concrete plan to move back in. Isn't that what our precedent, the Supreme Court, isn't that what our precedent and the Supreme Court says is necessary? I, I think you have to put this in context of what the return to Oceanview is. And the return to Oceanview is the safety net. It's the safety net if things go bad on the outside. And this is again, right, but, but using this as, here's, here's a, just a very concrete analogy. Suppose you had a construction worker who's suing an employer who's forcing him to work on a high scaffolding without a safety harness, right? And you wouldn't say, well, you have no standing unless you have a concrete plan to fall off the scaffolding. He has a plan to go up on the scaffolding and needs the safety net there to protect him from that risk that's a serious risk. And we, it is a serious risk that he will fail if he goes back out into independent housing again. And it's, the, the, so, so that brings us, it's, it's that risk. He doesn't have a concrete plan to fail. Obviously he doesn't have a concrete plan to fail. But it's a serious risk that he will fail. No, no more different than the construction worker on the scaffolding. Doesn't need a concrete plan to fall off. And so that brings us to the first point is his plans to move out. And again, at the time of the summary judgment briefing, I want to put this in the context of the facts as they existed in there, the state made the exact same argument that they're making here at the time of summary judgment. They said it's completely speculative that he'll ever move out. And if he moves out, it's completely speculative that he'll ever move back in. As summary judgment briefing was ongoing, the housing providers, the liaisons found an apartment for him. He actually did move out to that apartment. He was there for a matter of hours before he had a crisis and ended up coming back wanting to get back in. So those events did actually happen while it was ongoing. He came back and immediately said upon returning that he still wanted to move out. He wanted to go back in the process and find another apartment and move out again. So the record is complete with him talking about wanting to be at Oceanview and the special things to him about Oceanview, the support network, the walk he likes to take, the neighborhood he feels comfortable in. So I would even back you up to the first domino that has to fall, which is him leaving. The record is, I mean, there's pages. If you just pull out the places where he says Oceanview is where I'm safe and comfortable. So how do we even know he's going to move out again? Well, I mean, I think that's, I mean, in his deposition taken in this case prior to the summary judgment, he was adamant about his desire over and over again to move out. And Oceanview only came up as a, well, what if things don't work out for you? And that was the only time he came back to saying, well, then I'd want to come back to Oceanview. I think it's been more the opposite. He's been adamant, consistent all along, and he has moved out. This has actually happened. It's not something that, you know, there's just some, you know, just something he's expressed but never actually done. He's gone through the process that's in place to work with the facilitators to locate an apartment, to find apartments, and then actually moved out to those apartments. And he's done that. He did that once. And then when he came back, he said he wanted to do it again. He actually did go through the process again, went through the whole process, got an apartment, got moved out to that apartment, did the whole thing again, and then came back again. And upon coming back, he said, I still want to move out. I want to move out to the apartment. And that's where things stood. They've, again, in the reply brief, they've criticized saying multiple times, they say, well, the last statement we have of his intent was in his December 2021 affidavit, and we don't know anything about his intent since then. Well, that's because that was the record at the time of the summary judgment briefing, and that's the record upon which this appeal is based. So, yes, we haven't had an opportunity to make a factual record of what he's done since then and his steps he's taken to move out because we're working off the record at the time of summary judgment. Thank you. Thank you, counsel. Thank you. And Mr. Malone, you have two minutes for rebuttal. Thank you. Your Honor, there's no need for a factual record here. There's no dispute that Oceanview has been taken off the list of transitional adult homes. In fact, counsel here just admitted it. And under the precedence of the Supreme Court and this Court, a party has to show standing at every stage of the proceedings, including at the appellate stage. If Mr. Doe has no standing now, the proper course is to dismiss his claims for lack of standing, not remand it, because as counsel admitted, there's no factual dispute that Oceanview is no longer a transitional adult home. Now, he said there's a risk that Oceanview could become a transitional adult home again. But even if it does, which again is highly speculative, one of those links in the chain of possibilities, there's the waiver provision. The record shows that the waiver provision has been effective in giving people waivers, letting them come back in. As counsel admitted, Mr. Doe was able to come back to Oceanview within hours the last time he moved out. That shows... The regulation that we're talking about, which is designed to limit the proportion of people in these transitional homes who have serious mental problems, that was adopted pursuant to the compulsion of a lawsuit, am I correct? It was adopted in response to the lawsuit, and when the regulations were adopted, they were negotiated in consultation with the Department of Justice, and disability advocates, and the settlement agreement actually specified that the regulations... If you were to override those regulations, what ramifications would there be in terms of the compulsion that caused you to create them in the first place? That's an interesting question, and it's an open issue. Judge Garifas has called the regulations the foundation of the settlement, and he said the enforcement of the settlement, I'm sorry, the enforcement of the regulations is essential to the settlement. If the regulations were no longer in place, it's likely there'd be further litigation in the Eastern District case as to whether or not the state is in compliance or needs to take further action. Thank you. Okay. Thank you, counsel. Thank you both. We'll reserve decision.